Good morning, Your Honours. Cindy S. Chan for the petitioner, Ms. Julia David. The issue here is, as a Chinese and Christian, Ms. David, the petitioner here, the past persecution, the bad experience he has suffered in Indonesia, rise to the level of persecution, and she has a well-founded fear to return to Indonesia, and her asylum application is warranted a favour grant. And as the court already decided in Siao that the Chinese Christian are a disfavoured group, in Indonesia, and the petitioner, Ms. David, in her application for asylum, did mention a few incidents that happened to her while she was in Indonesia, as a Chinese, as a Christian. And she had suffered persecution, she had physical and mental injuries, her property was damaged, and as such, we believe she is entitled and eligible for asylum application. Excuse me, Judge Fletcher, go ahead. Counsel, as I read the papers, she appeals only on the basis of her Chinese origin, rather than, she says, not on religion, which surprised me a little in that one of the incidents did involve religion. I believe only because the religious part was not as many incidents happened to her personally as a Chinese woman growing up in Indonesia. However, she is a Christian, and she had some bad experience as a Christian, were threatened by the native in Indonesia. When the BIA dealt with this, Siao had not yet been decided. No, it was not. Siao was decided about ten months later. That's right. What do you think of the idea of granting your petition for review and remanding it to the BIA for reconsideration in light of Siao? I believe that's a very wise decision, Your Honor. I appreciate that, if that will be the case. Maybe you want us to hear from the government, and then you'll have more time to respond. Okay. Thank you. Anything else you wanted to add now, or are you done? Thank you, Your Honor. Thank you very much. Thank you. Good morning. May it please the Court. My name is Sarah Maloney, representing the respondent, the Attorney General. Speak up a little bit. Substantial evidence supports the agency's decision. On the record presented before the agency, a reasonable fact-finder is not required to conclude that the petitioner satisfied her burden of proving that she's a refugee. The immigration judge properly determined that the petitioner didn't prove an objective basis for her fear of return. He reasonably determined, based on the documentary and testimonial evidence presented, that by 2001, conditions for ethnic Chinese had significantly improved and the petitioner didn't show that she was individually targeted for persecution. You say the condition had materially improved by 2001? Yes, on the country conditions evidence before the immigration judge. Do you think there might be some more evidence that ought to be reconsidered? I know this is not part of the record, but I read where three Christian Chinese women, I assume they're Christian, were recently beheaded there. You probably haven't seen the story. No. There is evidence in the record to show that there are sporadic, isolated attacks against Christians in Indonesia. However, as Judge Fletcher pointed out, the petitioner didn't pursue her religious asylum claim before the board. At best, that evidence, even had she pursued it, would show merely a generalized or random possibility of persecution, which doesn't meet the well-founded fear standard under the INA. Let me ask you the same question I asked Ms. Chang. Sale wasn't on the books at the time the BIA was dealing with this. It came out ten months afterwards. Why shouldn't we send it back to the BIA and say, look, reconsider your decision. You've decided however you want, but reconsider it in light of Sale. Why wouldn't that be the smart thing to do? This case is distinguishable from Sale in that on the evidence presented, a reasonable fact finder wouldn't be compelled to conclude that ethnic Chinese are a disfavored group. Was that for the BIA to say in the first instance under Ventura? Well, the BIA analyzed this case under the law at the time in 2002, and COSAT was good law at the time. Right, but now we have a new case, and she gets the benefit of the new case, so why shouldn't we say, okay, go back and reconsider it in light of the new case, and we'll give you the first guess at it. If this Court believes that substantial evidence doesn't support the agency's decision to remand under those conditions are in order. Another distinguishing factor, though, between the facts of this case and Sale is that the board and the immigration judge had before it country conditions evidence up to 2001, which are significantly different than Sale, which only had it through 1999. By 2000, the government, there's evidence in the record that the Indonesian government was attempting to address the social and political inequity amongst the population, as well as to address the discrimination, the harassment, and the threats by the ethnic Chinese. Counsel, my understanding of how this all works is that if we do a remand, they then look at the current country conditions. So this would be in light of this beheading of the three women.  It would seem that the BIA could consider Sale, and they could also consider current country conditions. The board could, although the government submits the remand isn't in order on that evidence. That evidence doesn't show a serious and widespread threat to ethnic Chinese. I know that ethnic Chinese aren't his favorite group. Nobody can debate that. That's why there are these sporadic, every time country conditions go bad economically, they take it out on the Chinese. I mean, there's this whole history of that. So the only question really is whether this individual had suffered any effect from that. And in the Kozat's case, they say that you don't have to have, if you've got a disfavored group, that the individual events do not have to be as pervasive or severe. So it seems to me that Judge Silverman's suggestion is very sound. Just send it back and let them work it over. I would like to point out one other distinction between the facts of this case and Sale. This court relied heavily on the evidence that showed that ethnic Chinese were still targets of official government discrimination. And as I mentioned before, since 2000, the Indonesian government officially promotes racial and ethnic intolerance, and racially motivated attacks against ethnic Chinese have dropped sharply since 1998. In the petitioner's specific particularized facts, we know that she didn't flee persecution. That wasn't the motivating factor for her to come here to the U.S. So there wasn't any harm that provided her with sufficient motivation to flee Indonesia. Her parents remained in Indonesia without incident, and that undercuts any objective basis for her fear. But in conclusion, the government submits that the record, the board's decision, is supported by substantial evidence. And unless there are any further questions. I don't think so, Ms. Roney. Thank you. Thanks. Ms. Cheng, anything you'd like to add? If you'd go to the mic. Thank you. Just to say that each case is different. And the fact that her parents are still in Indonesia should not be calculated to undermine her claim. We should look into the particular case herself, her personal experience as a Chinese woman, as a Christian. And in that regard, she has the sufficient evidence to show that she did suffer past persecution because of her race, because of ethnicity, because of religion. And she still has the fear to return to Indonesia because the country's condition never really changed to be better. Even the country report of the human rights, indicating that there's still a lot of reports. And the most recent incidents of the Christian woman got added up. It's the proof to that regard. So I appreciate the courts, if this case could be remanded back to the BIA to the new determination. Thank you, Your Honor. Thank you, Ms. Cheng. Ms. Roney, thank you. The case is argued as submitted.
judges: Bright , B. Fletcher, Silverman